CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
August 14, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISCTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HEATHER KEEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TRACI A. KEEN, *et al.*, )<br>)<br>Defendants. ) | Civil Action No. 7:25-cv-00475<br><br>By: Elizabeth K. Dillon<br>    Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Heather Keen moves for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1).  For the following reasons, the court will grant Keen's motion for leave to proceed *in forma pauperis* (ifp) (Dkt. No. 7), but it will dismiss her amended complaint (Dkt. No. 8) without prejudice for lack of subject-matter jurisdiction.  The court also denies without prejudice all other pending motions in this case.[1]

I.   PROCEDURAL BACKGROUND

On July 16, 2025, Keen filed a pro se complaint against defendants Traci A. Keen, Nathan F. Keen, Cambridge Investments Research, Inc., and Christopher Raup, alleging that the defendants acted in concert through a pattern of fraud, exploitation, and concealment to deprive her of her lawful inheritance rights.  (Dkt. No. 1.)  With her complaint, Keen also filed an application to proceed ifp under 28 U.S.C. § 1915(a)(1).  (Dkt. No. 2.)  On July 29, 2025, the court denied without prejudice Keen's motion for leave to proceed ifp because the application contained incomplete information.  (Dkt. No. 6.)  On July 29, 2025, Keen filed a revised motion

---

[1] Most of those pending motions were automatically referred to the assigned United States Magistrate Judge.  The court will withdraw the reference as to all pending motions and will rule on them.

for leave to proceed *in forma pauperis*. (Dkt. No. 7.) On July 30, 2025, Keen filed an amended pro se complaint against defendants, which largely reiterates the allegations contained in her original complaint. (Dkt. No. 8.) The court is treating Keen's amended complaint (Dkt. No. 8), which she was permitted to file without leave of court under Rule 15(a), as the operative complaint. Keen has not sought leave to file her second amended complaint (Dkt. No. 11), so it is not properly before the court.[2]

## II. DISCUSSION

### A. Keen Qualifies for *In Forma Pauperis* Status.

To support the motion to proceed *in forma pauperis*, Keen has completed a preprinted form responding to certain questions about the state of her finances under penalty of perjury. (Dkt. No. 7.) The court has reviewed Keen's responses and determines that Keen cannot afford to pay the filing fee. It will therefore grant Keen's motion to proceed *in forma pauperis* and allow her complaint to be filed without payment of the filing fee.[3]

### B. The Court Lacks Subject-matter Jurisdiction Over Keen's Amended Complaint.

Although Keen has been permitted to file her amended complaint without payment of the

---

[2] Even if the court treated Keen's second amended complaint as the operative complaint, it suffers from the same deficiencies and would likewise require dismissal on the same grounds. That version of the complaint also appears to assert a claim under 42 U.S.C. § 1983, but that purported federal claim fails because none of the defendants acted under color of state law, and there is no evidence—only a bare assertion—that unspecified "public officials" and private actors (presumably defendants) "collud[ed]." (Dkt. No. 11-2, at 1.) This claim is unsupported and frivolous, as is her request that the court "refer the matter" for criminal investigation and prosecution. (Dkt. No. 11-3, at 2.) Keen may contact law enforcement to report criminal activity, but the court does not refer persons for criminal prosecution.

[3] The day after she filed a revised ifp motion with sufficient detail, Keen filed an "amended" motion that also includes more than sixty pages of exhibits containing various financial documents, such as her 2022 tax returns. (Dkt. No. 10.) None of that documentation is required or necessary to support an ifp application, and the court need not consider it. Additionally, immediately after Keen complains that she "was told," presumably by a deputy clerk, that she did not need to submit the "long form" ifp application, she writes, "Denial of support[;] denial of discovery." (Dkt. No. 7-2.) To the extent she is suggesting she was given inaccurate information, she is incorrect. As the clerk advised her, she did not need to submit the long form application. But she was required to answer the questions in the short form with sufficient information to allow the court to evaluate her claim that she is unable to pay. Her original ifp application failed to do so and consequently was denied. (Dkt. No. 6.)

filing fee, the court must dismiss her claims for lack of subject-matter jurisdiction. "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). "Accordingly, questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court." *Id.* at 390.

A federal court has subject-matter jurisdiction over a civil action if it presents a federal question, 28 U.S.C. § 1331, or if there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332.[4] The burden of establishing subject-matter jurisdiction rests with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 646 (4th Cir. 1999). If a plaintiff cannot meet that burden, the court must dismiss the complaint. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Keen expressly invokes diversity jurisdiction as the basis for subject-matter jurisdiction. (Am. Compl. ¶ 8.) Construing her complaint liberally, the court also treats her complaint as invoking federal-question jurisdiction, in that her first claim alleges a civil violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), citing 18 U.S.C. § 1962.[5] (*Id.* ¶ 26.) In order to adequately invoke federal-question jurisdiction, though, Keen must plead a *colorable* RICO claim. *See Arbaugh*, 564 U.S. at 513; *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 549–50 (E.D. Va. 2009) (noting that the jurisdictional inquiry under RICO

---

[4] A district court also has jurisdiction over certain other types of cases, but this case does not fall into any of those categories. *E.g.*, 28 U.S.C. §§ 1345, 1346 (United States or its agency is a plaintiff or defendant); 28 U.S.C. § 1333 (admiralty, maritime, and prize cases); 28 U.S.C. § 1335 (interpleader actions above a certain amount).

[5] Keen also invokes this court's supplemental jurisdiction over her state-law claims pursuant to 28 U.S.C. § 1367 (Am. Compl. ¶ 9), but in order for that statute to apply, the court must first have original jurisdiction over the case.

requires a *colorable* claim and collecting authority).

As the court discusses herein, Keen's own allegations make clear that diversity jurisdiction is lacking. Further, the court does not find Keen's RICO claim to be colorable; thus, the RICO claim does not confer jurisdiction on this court. *See Arbaugh*, 564 U.S. at 513. Alternatively, even if it colorable, the RICO claim clearly fails to allege facts sufficient to state a claim and is subject to dismissal on that ground. Thus, the court will dismiss the complaint without prejudice.

**1. Keen has not established diversity jurisdiction.**

To invoke diversity jurisdiction, a plaintiff must demonstrate complete diversity between the parties and an amount in controversy exceeding $75,000. *Cent. W. Va. Energy Co. v. State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Complete diversity exists only when no plaintiff is a citizen of the same state as any defendant. *Id*.

In the paragraph invoking jurisdiction, Keen neglects to include the name and residency of the one defendant that destroys complete diversity. But elsewhere the complaint clearly alleges that both Keen and one of the named defendants—her brother, Nathan F. Keen—are citizens of Virginia. (Am. Compl. ¶ 14; *id.* at 15 (listing plaintiff's address in Virginia).) Because complete diversity of citizenship is lacking, Keen cannot establish diversity jurisdiction. *See Garver v. Holbrook*, 546 F. Supp. 3d 465, 471 (E.D. Va. 2021); *Cox-Stewart v. Best Buy Stores, L.P.*, 295 F. Supp. 2d 566, 567 (D. Md. 2003) (explaining that complete diversity of citizenship must be established).

**2. Keen has not established federal-question jurisdiction.**

Federal-question jurisdiction requires that a plaintiff's cause of action arise under federal law. *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001). Under the

4

well-pleaded complaint rule, a federal question must appear on the face of the complaint. *Id*.

Keen's complaint directly asserts a civil RICO claim, as noted. But a court still may lack jurisdiction over such a claim if it is not colorable, meaning that it is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). For the reasons discussed next, the court concludes that Keen's RICO claim is so lacking in merit that it does not involve a federal controversy. Put differently, she has not alleged a colorable civil RICO claim.

Civil RICO creates a private cause of action for anyone "injured in his business or property by reason of a violation of" § 1962. 18 U.S.C § 1962(c). Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

18 U.S.C § 1962(c). To plausibly allege a RICO violation under § 1962(c), a plaintiff must "adequately plead '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 105 (4th Cir. 2025) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Further, a plaintiff must allege facts sufficient to show that the RICO violation caused an injury to a business or property interest. 18 U.S.C. § 1964(c); *Albert v. Glob. Tel\*Link*, 68 F.4th 906, 910–11 (4th Cir. 2023) (explaining that § 1964(c), which establishes a private right of action under RICO, "requires a 'direct relation' between the plaintiff's injury and the defendant's RICO violation" (quoting *Holmes v. Sec. Inv. Prot. Corp.,* 503 U.S. 258, 268 (1992))). *See also Noble Sec., Inc.*, 611 F. Supp. 2d at 550 (explaining that the injury to business and property and causation are

5

viewed as standing elements) (citations omitted).

    a. *Keen's Allegations*[6]

The allegations in this case appear to be a garden-variety dispute between siblings over a deceased parent's assets. In general terms, Keen asserts claims based on defendants' alleged actions in fraudulently converting her parents' assets. Although Keen has at least two siblings, both named as defendants, Keen alleges that she is the "only heir of [her parents], and of their estate." (Am. Compl. ¶ 12.) Confusingly, this allegation is contradicted by the allegation that her mother inherited all of her father's assets upon his death. (*Id.* ¶¶ 18, 20.) Indeed, some of the alleged fraud or conversions apparently occurred *before* her father's death (*id.* ¶ 4), so those acts were committed against Keen's father (or possibly her mother, who inherited all assets of her father), but not against Keen herself.

That contradiction aside, Keen explains that her father died in 2013, with all assets passing to his wife, Jacquelyn H. Keen. Jacquelyn was declared "fully disabled" in 1989 or 1990 and remained so until her death.[7] (*Id.* ¶¶ 3, 4, 7, 10, 17, 18.) Between 2013 and 2017, Keen alleges that Traci A. Keen and defendant Christopher Raup, a financial adviser who worked for defendant Cambridge Financial and who was hired by Traci, "assumed improper control of estate assets." (*Id.* ¶¶ 6, 10.) Elsewhere, she alleges that before and continuing after her father's death, "defendants began converting assets belonging to the marital estate," including individual retirement accounts, stocks, bonds, insurance policies, and cash accounts, in amounts of approximately $4 billion. (*Id.* ¶¶ 4, 20.) She claims that her brother Nathan improperly

---

[6] Keen's allegations are not particularly detailed as to times, places, or specific acts by specific defendants. The court summarizes her allegations and includes nearly all of the relevant details she provides.

[7] Keen appears to reference her mother's disability in reference to the statute of limitations, which she notes Virginia tolls for persons under a disability. (Am. Compl. ¶ 7.)

converted "all firearms" and two vehicles within two weeks of their father's death. (*Id.* ¶ 20.) And she alleges that Traci "tortured" their mother "and possibly attempted to end her life, possibly [at] the time of conversions." (*Id.*) She also lists specific assets that she believes were converted. (*Id.*)

She does not provide much detail as to the alleged role Raup and Cambridge Financial played in the conversions. According to her allegations, they apparently engaged in some asset management for Traci and also "instigated conversion . . . after demanding will [and] power of attorney" but then stating they would need other beneficiaries' signatures. (*Id.* ¶¶ 6, 27.) Keen further alleges that Cambridge could have prevented additional harm had they timely contacted the other beneficiaries. (*Id.* ¶ 27.)

In 2017, Jacquelyn moved to Virginia and established residency. (*Id.* ¶ 10.) At some point in 2017 to 2018, Jacquelyn began to learn what "had been done unto her." (*Id.* ¶ 24.) She was placed on hospice in 2021. (*Id.* ¶ 25.) She died in 2023. (*Id.* at 9.)

Keen also alleges, without elaboration, that "defendants concealed [their] acts through manipulation of financial accounts, withholding taxation information in regards to accounts, and [making misrepresentations] to financial institutions and government agencies." (*Id.* at 10.)

Additionally, the amended complaint describes Keen's efforts to discover information about specific assets and other information, including sending demand letters to defendants and calling her siblings. She also attempted to obtain financial disclosures via probate court and asserts that she was "repeatedly denied access of Due Process."[8] (*Id.* ¶ 21.) The amended complaint refers to a list of exhibits that purportedly support her allegations, but those exhibits

---

[8] These allegations also form the basis of a separate complaint she has filed in this court, in *Keen v. Harrison*, 7:25-cv-00474 (W.D. Va.), in which she names judges, the Clerk, and the chief probate officer of the probate court.

were not attached. They likewise are not attached to her second amended complaint, although other documents are. (Dkt. Nos. 11-1 to 11-4.) Some of the listed exhibits, but not most of them, appear in a separate docket entry entitled "Additions to the Complaint," which the court has reviewed and considered in conjunction with its review of the complaint. These include Jacquelyn's will dated August 23, 2021, Christopher's certificate of death and documents related to his estate, and a February 10, 2025 document appointing Keen executor of Jacquelyn's estate, noting that it is a "small asset estate" and that the maximum amount of estate assets that may be collected pursuant to the certificate "shall not exceed $25,000." (Dkt. No. 4-3.)

The foregoing details are contained within the sections addressing jurisdiction, the parties, and the factual background, as well as in a two-page "motion" to toll the statute of limitations. In the portion of the amended complaint listing her claims for relief, which the court presumes incorporates the factual background although it does not expressly say so, Keen's civil RICO claim consists of a single brief paragraph. It states that defendants "engaged in a coordinated scheme to misappropriate estate assets using wire, mail, and interstate communications. Their conduct constitutes a pattern of racketeering activity under 18 U.S.C. [§] 1961(5)." (*Id.* ¶ 26.) With regard to her fraud claim, she states that defendants "knowing[ly] misrepresented or concealed material facts" about estate assets and that Traci "fraudulently represented" that she was "helping her parents at a dire time." (*Id.* ¶ 28.)

   b. *Keen's Allegations Fail to State a Non-Frivolous Civil RICO Claim.*

Keen has failed to adequately plead the elements required to state a claim under Section 1962(c). While she alleges that defendants Traci A. Keen, Cambridge Investment, and Christopher Raup participated in a wrongful scheme involving the conversion of estate assets, her complaint does not contain specific factual allegations establishing a pattern of racketeering activity as

8

defined under the statute.

First, the complaint does not clearly or adequately identify any predicate act of racketeering that is enumerated in § 1961.  Although Keen alleges "fraud, exploitation, and concealment," she does not specify the nature of the alleged fraud with the particularity required under Federal Rule of Civil Procedure 9(b).  When RICO claims are premised on fraud, these allegations must meet Rule 9(b)'s heightened pleading standard, including "the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *Elite Mech. & Welding, LLC v. Chalk Point Power, LLC*, No. CV DLB-22-3257, 2025 WL 170981852106751, at *6 (D. Md. July 28, 2025) ("When RICO allegations sound in fraud, the plaintiff must meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b).").  Keen offers only vague and conclusory allegations regarding the alleged fraud, without providing any factual basis or substantiation for the figures she cites or explaining how the defendants carried out the purported fraudulent scheme.[9]

Second, even assuming the existence of a predicate act, Keen does not plead facts demonstrating that the alleged misconduct amounts to a "pattern."  A RICO "pattern" requires "'the showing of a relationship' between the predicates, and of the 'threat of continuing activity.'"  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (citation omitted) (explaining that "[i]t is [the] factor of *continuity plus relationship* which combines to produce a pattern").  Keen's allegations of asset misappropriation, which appears to have occurred primarily before 2017, fail to show continuity or a threat of ongoing criminal conduct by

---

[9] Moreover, a RICO claim based on fraud requires fraud that violates *federal* law, such as mail fraud or wire fraud.  Because Keen has not identified precisely what occurred with regard to the alleged fraud, it is impossible to know whether the fraud here would constitute a federal violation, as required to state a civil RICO claim.

9

defendants.

> As the Fourth Circuit has cautioned, courts must be
>
>> cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice. . . . This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity. . . . We have reserved RICO liability for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989).

*Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (cleaned up and internal citations omitted).

In *Al-Abood*, the court concluded that the case was "not sufficiently outside the heartland of fraud cases to warrant RICO treatment." *Id.* at 238. And it emphasized that "the narrow focus of the scheme here—essentially a dispute between formerly close family friends—combined with the commonplace predicate acts persuades us that the facts here do not satisfy the pattern requirement." *See id.* The same is true here. Even if mail fraud occurred, this "scheme" had one victim (or maybe two) and is essentially a dispute between siblings over their deceased parents' assets. As in *Al-Abood*, the allegations here, especially given the lack of detail or particularity as to the alleged fraud, do not "warrant RICO treatment." *See id.*; *see also Smith v. Chapman*, No. 3:14-CV-00238-MOC, 2015 WL 5039533, at *11–12 (W.D.N.C. Aug. 26, 2015) (granting summary judgment in defendant's favor as to the civil RICO claims against her where the case was "essentially a dispute between friends-turned-business colleagues over business relationships that, by all accounts, severely soured").

Keen also does not plausibly allege the existence of an "enterprise" distinct from the defendants themselves. A RICO "enterprise" is an "ongoing formal or informal organization

10

whose associates function as a continuing unit." *Palmetto State Med. Ctr., Inc. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Keen does not distinguish between the actions of each defendant or show how they functioned continuously as part of a structured entity with a formal or informal structure. Instead, her allegations describe a series of transactions and events that lack the organizational unity typically required to establish a RICO enterprise. Aside from blanket assertions that defendants colluded or agreed, moreover, she alleges no specific facts that show an agreement.

Because Keen's allegations fail to state a colorable RICO claim, the court lacks subject-matter jurisdiction.

### C. Alternatively, Keen's Only Federal Claim—Her Civil RICO Claim—Fails to State a Claim For Which Relief Can Be Granted and Is Subject to Dismissal.

As courts have recognized, the inquiry of whether a plaintiff states a sufficiently colorable federal claim to invoke subject-matter jurisdiction is distinct from the inquiry of whether plaintiff has adequately stated a claim on which relief can be granted, the inquiry relevant under Federal Rule of Civil Procedure 12(b)(6). *See Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 549–50 (E.D. Va. 2009). Because Keen is proceeding ifp, this court has an obligation to review her complaint and dismiss it "at any time" if it is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i)–(ii).

For the same reasons discussed in the preceding section, even if Keen's RICO claim could be considered sufficiently plausible to confer federal-question jurisdiction on this court, it fails to allege sufficient facts to state a claim for which relief can be granted. Thus, at a minimum, her complaint is subject to dismissal for failure to state a claim. And if that is the proper basis for dismissal of her RICO claim (as opposed to lack of jurisdiction), then the court declines to exercise supplemental jurisdiction over her state-law claims. *See* 28 U.S.C. § 1367(c) (allowing

11

a district court to decline jurisdiction over supplemental state-law claims if the "court has dismissed all claims over which it has original jurisdiction"). Thus, regardless of the approach, Keen's complaint must be dismissed without prejudice.

### III.  CONCLUSION AND ORDER

For the foregoing reasons, the court GRANTS Keen's amended motion for leave to proceed *in forma pauperis*. (Dkt. No. 10.) However, because Keen has failed to establish either diversity or federal-question jurisdiction, the court lacks subject-matter jurisdiction over her complaint.

In the alternative, her civil RICO claim fails to allege facts sufficient to state a claim for which relief can be granted and is subject to dismissal on that ground, and the court declines to exercise supplemental jurisdiction over her remaining non-federal claims.

It is thus ORDERED that her amended complaint (Dkt. No. 8) is dismissed without prejudice. It is further ORDERED that the reference to the U.S. Magistrate Judge of other pending motions is WITHDRAWN and those motions are DENIED WITHOUT PREJUDICE. The Clerk shall STRIKE this case from the active docket of the court.

The Clerk shall provide a copy of this memorandum opinion and order to Keen.

Entered: August 14, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge